CASE No. 962.

STATE, *EX RELATIONE* HAMER, v. STACKHOUSE.

1. The act of February 15th, 1872, (15 *Stat.* 42), which empowers a land-owner to secure a right of way over the lands of another, violates none of the provisions of the constitution of this state.
2. This act, in authorizing a road or highway to the nearest highway, was intended to secure to parties a way of ingress and egress, by whatever name called, to the nearest highway, and does not confine the referees to a location upon the nearest line to the highway.
3. This act is of force throughout the state, as well within the limits of incorporated cities and towns as elsewhere, except where acts of incorporation, by express words or by necessary implication, exclude it. There is no such exclusion in the charter of Little Rock, Marion county.
4. Where one opens a road over his own land, from the back part to the highway, and afterwards, by deeds without reservation of a right of way, conveys the intervening lots to others, who close up this road, he is not estopped from demanding that a road be opened to him over those lots under the act of 1872.
5. Prohibition is the proper remedy for keeping referees appointed under this act within the limits of their jurisdiction.
6. But prohibition is preventive only, and, therefore, after the road has been opened and this *quasi* court dissolved, redress cannot be obtained under this remedy.

Before HUDSON, J., Marion, April, 1880.

Application for a writ of prohibition upon the relation of R. P. Hamer against E. T. Stackhouse, R. Murchison, A. Schafer, referees, and D. W. McLaurin and R. R. Hays, restraining the defendants from proceeding further in the matter of establishing

a road from the lands of McLaurin and Hays over land belonging to the relator. This road was established by the referees named, under their hands and seals, March 19th, 1880; notice of the application for this writ was dated March 20th; and the hearing was had by the Circuit judge April 10th.

For a few years prior to 1877, McLaurin owned a lot of land in the town of Little Rock, in Marion county. About the same time the wife of McLaurin purchased from Hamer another. lot of land adjoining and took titles. Her husband assumed control of this lot also, and laid out a road from the back part of his own lot across other parts of his lot and on the edge of the lot of his wife, to the public highway leading through Little Rock to Marion C. H. In 1877, McLaurin sold to Hays a part of the back of his lot, and to Mrs. Sternberger the front part of his lot. In 1878, Mrs. McLaurin having failed to pay for her purchase, reconveyed to Hamer. In neither the deed to Sternberger nor in the deed to Hamer was there any reservation of a right of way over this road; and the land so conveyed intervened between the land retained by McLaurin and the land sold to Hays on the one part, and the highway on the other part, along the line of this road.

Sternberger and Hamer afterwards moved their fences so as to obstruct this road. McLaurin and Hays, in February, 1880, gave the necessary notice under the act of February 15th, 1872, of their intention to establish a right of way over the lands of Sternberger and Hamer, one or both, to the highway. Hamer protested and declined to name a referee, whereupon the referee named by McLaurin and Hays, and the referee named by Sternberger, selected a referee for Hamer; and these three referees made their report, whereby they established a road just where the former road had been, and awarded the damages. In their report they state that the road was not located by the most direct line to the highway, and gave their reasons for the location selected.

The order of the Circuit judge is as follows:

D. W. McLaurin, a citizen and resident of the town of Little Rock, in the county of Marion, is the owner of a parcel or lot of

land in the said town without a right of way thereto, or mode of ingress and egress to any public road or highway.

To obtain this communication with the highway, he applied to the persons whose lots shut him out from the main street for permission to open a street of sufficient width from the public road or main street to his lot. This consent he failed to obtain from Mr. R. P. Hamer, one of the owners of intervening land. Whereupon he proceeded, under act of February 15th, 1872, to have the said street laid out by a board of referees, whose action is set forth in a report or finding accompanying these proceedings, with a plat of the road, street or highway which they have given to D. W. McLaurin over the lands of R. P. Hamer and others. In order to prevent the accomplishment of this matter, R. P. Hamer, the only dissenting land-owner, applies for this writ of prohibition against D. W. McLaurin and the said board of referees.

The town of Little Rock was incorporated March 9th, 1872. 15 *Stat.* 130. In that act no power is given to the town council to open a street except by consent of the owner of the land through which it runs; and unless relief can be had under the act of February 15th, 1872, (15 *Stat.* 42), D. W. McLaurin is without the means to obtain access to the public road from his lot by any existing law. The sole question presented by the record, which it is necessary to determine, in my opinion, is whether the act of February 15th, 1872, is in operation within the limits of an incorporated town. It is to be observed that the power conferred by that act upon referees is not conferred upon any of the authorities of the town of Little Rock; but by the tenth section thereof all similar or like power is denied to them; and if the act of February 15th, 1872, cannot be enforced within the limits of that town, its citizens are in a worse plight in this regard than those without the corporate limits, in the event of being without access to a public highway.

The act in question is general, and, in our judgment, is of force in every part of the state, as well within as without the limits of incorporated towns, unless the act of incorporation, by express words or by necessary implication, excludes it. It was a general law before Little Rock was incorporated, and we find

nothing in the act of incorporation which expressly or by implication excludes its operation within the town.

We therefore adjudge the referees aforesaid have jurisdiction of the subject matter of this action sought to be prohibited, and that, having jurisdiction thereof, they have not exceeded it in their findings and proceedings. We deem it useless to notice other points raised in the application for the writ and in the argument of counsel.

It is adjudged that the petitions or suggestions in prohibition be dismissed with costs, and the writ is denied.

The relator appealed upon the following grounds:

1. Because his Honor, J. H. Hudson, erred in holding that the referees have jurisdiction of the subject matter of their action sought to be prohibited herein.

2. Because his Honor, J. H. Hudson, erred in holding that the act of the legislature of February 15th, 1872, is of force throughout the state as well *within* the limits of incorporated cities and towns, as elsewhere, except where acts of incorporation, by express words or by necessary implication, exclude it, and that it is neither excluded by express words nor by necessary implication by the act of incorporation of the village of Little Rock, S. C.

3. Because his Honor, J. H. Hudson, erred in holding that said referees having jurisdiction in the premises, did not exceed their jurisdiction in their findings and proceedings.

4. Because his Honor erred in holding that it was useless to notice the point raised (which is hereby renewed) that said act of February 15th, 1872, is unconstitutional, null and void.

5. That his Honor erred in overruling the position that D. W. McLaurin could not lawfully demand a way or right of way over lands of others after having deliberately sold off the very lands without reservation.

*Mr. J. M. Johnson,* for appellant.

*1st Ground of Appeal.*—The act of February 15th, 1872, providing for referees, authorizes said referees to construct, *first,* a highway or road; and, *second,* to the nearest highway then

existing. "A *highway* is not a street, either technically or in common parlance." 12 *Rich.* 418; *Dill. on Mun. Corp.* 518. As the act provides for highway or roads, and not streets, the referees had no jurisdiction. The act provides that it shall be to the nearest highway. The relator set forth in his prayer that the right of way would not be to the nearest highway if opened through his land. The referees find the prayer true. *Dill. on Mun. Corp.,* § 469, and authorities cited; *Cooley on Const. Lim.* 528, 541. Hence, the referees, not having complied with the only mode prescribed by the statute, their act is void.

*2d Exception.*—General road acts do not apply to incorporated cities and towns, having special power to regulate and improve streets. 12 *Rich.* 407; 18 *N. J. Eq.* 305; 14 *S. & R.* 448. A general act in the nature of the act of February 15th, 1872, does not apply to the streets of a town, the charter of which confers on the corporation the authority to regulate streets and sidewalks, on the principle that the *general legislation* on a *particular subject* must give way to *special legislation* on the same subject. 33 *N. J. L.* 280; 16 *Pick.* 508; 1 *Overton (Tenn.)* 311. So that the power being placed in the intendant and wardens of Little Rock under the charter, (§ 10), by special legislation, the act of February 15th did not apply and the referees had no jurisdiction.

*3d Exception.*—The fourth section of the act defines the duties of the referees—first, to faithfully determine the location; and the first section defines the location to be "to the nearest highway then existing." The referees find, as a fact, in their report, "that to pass over the lands of the relator would lengthen the way to the public way," so, by their own finding, they have exceeded the power placed in them by the act, and, therefore, their act is void.

*4th Exception.*—The act of February 15th, 1872, authorizing three persons, styled "referees," to open highways, is unconstitutional, for the following reason, to wit: It contravenes Article I., Section 14 of the constitution. The law of the land in regard to taking private property for public purposes, rests upon the right of *eminent domain;* to put that right into active energy a power is lodged with the legislature by the people. The legislature holds the position of a trustee, burthened with the perform-

ance of a specific trust. This trust cannot be delegated. Again, the right of eminent domain can only be brought into active energy where the public is to be benefited, and it was never meant to benefit one private individual at the expense of another. *Cooley on Const. Lim.* 530, 531.

· *5th Exception.*—D. W. McLaurin, the respondent, is estopped from demanding this right of way on the well-established rule of estoppel. The principle is that where a man has entered into a solemn engagement by deed, under his hand and seal, as ·to certain facts, he shall not be permitted to deny any matter which he has so asserted. D. W. McLaurin, in executing title to the relator, parted with all right, title and *interest* in and to said land. That in now demanding and obtaining this right of way or highway, D. W. McLaurin becomes possessed necessarily with an easement—which vests in him an interest in said highway— and this, under his deed to the relator, he is estopped from doing under all the principles laid down in the books.

*Mr. C. A. Woods,* contra.

January 10th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. The question which arises first in this case, is that presented in the fourth ground of appeal. It is this: Is the act of February 15th, 1872, under which these proceedings were instituted, constitutional? This should be considered first, because the decision· of this question will determine whether or not it will be necessary for the court to proceed further.

If the act of 1872 is unconstitutional and void, then there is an end of this case. If, on the contrary, that act is constitutional and valid, then it will be necessary for the court to pass upon the other questions involved.

Section 14, Article I., of the constitution, provides that no person shall be despoiled of his property but by the judgment of his peers or the law of the land.

Section 23 of the same article provides that " private property shall not be taken or applied for public use, or for the use of corporations, or for private use, without the consent of the owner

or a just compensation being made therefor; *provided, however,* that laws may be made securing to persons or corporations the right of way over the lands of either persons or corporations and for works of internal improvement, the right to establish depots, stations, turnouts, &c., but a just compensation shall, in all cases, be first made to the owner." These two sections are in the same constitution and in the same article. They must be construed as parts of the same instrument, and to each must be given its legitimate effect and intent. It cannot be supposed that either was intended to be an unmeaning jargon; on the contrary, we must suppose that the framers of the constitution had a purpose in each.

The first guarantees to every citizen the constitutional right to demand the judgment of his peers and the application of the laws of the land before he shall be despoiled of his property. It throws around the citizen the protection of the courts and of the law, and it ensures to him the right of trial by jury—that inestimable right for which so many sacrifices have been made by our ancestors, and which has long been regarded as the bulwark of our liberties. It is a descendant of Runnymede and Magna Charta, and will never be yielded without a struggle by any free people to whom it may be or has been secured. But while this is true in a general sense, yet this right, great as it is, has a legitimate boundary. No citizen, under any circumstances, should be made to forfeit or be despoiled of his property but by the judgment of his peers or the law of the land; yet every citizen should be willing, under proper conditions, under proper laws and upon just compensation, to surrender his property when demanded by public necessities or the welfare of society. It is in this sense that the second section referred to above should be construed in connection with the first. They tend to the same end—the welfare of the people—and there is no conflict between them.

Hence the framers of the constitution, while recognizing the sanctity of the rights guaranteed in the first section, thought proper to make provision in the second, not only in the appropriation of private property for public use, but, in the matter of the right of way, private property even for private use; and to

this end, in the second section above, will be found an express grant of power to the legislature to secure, by proper laws, a right of way, both to corporations and to persons, over the lands of others, upon just compensation being first made to the owner of said lands. The act of February 15th, 1872, is a law of this kind. Its very end and purpose is to secure a right of way to parties walled in by the lands of others. It has no other object, and it provides the necessary machinery for ascertaining the just compensation required by the constitution in such cases.

It does not say what law shall be enacted to ensure the enjoyment of the right intended to be secured, nor does it indicate any special provision or limitation which, in the opinion of the framers of the constitution, might be necessary ; it simply delegates the power, in general terms, to make laws for that purpose, leaving the character and terms of the laws to the law-making power of the state, the only condition being that just compensation shall be first made to the owner of the property required to be sacrificed.

The act in question seems to have been passed in pursuance of the authority of this section, and we cannot understand how, when looked at in the light of that section, it can be regarded as unconstitutional, and, therefore, null and void.

Holding the act to be constitutional, it now becomes necessary to proceed to the consideration of the other questions presented in the grounds of appeal.

1. Did the presiding judge err in holding that the referees had jurisdiction of the subject matter of the action sought to be prohibited ?

The act of February 15th, 1872, authorizes the referees to construct a highway or road to the nearest highway then existing ; and the argument relied on here to show that the referees did not have jurisdiction is, *first*, that the way opened by them is neither a highway or a road ; and, *second*, that it does not run to the nearest highway.

In a strict technical sense, it may be that the way opened is not a highway or a public road ; but this is clearly not the character of the wrongs intended to be provided for in this act. The purpose of this act is to open to parties, otherwise cut off, a way

of ingress and egress to and from their lands to the nearest public highway, and the terms used in the act must be construed under the control of that object; and whether it be called a highway or a road—in that the end intended is accomplished—the act is satisfied.

The construction contended for by the appellant is too strict and narrow, and, if enforced, would negative the act entirely and leave it a dead letter on the statute book. Parties never, or seldom, desire a highway or public road, in the ordinary sense, leading from their private premises to the nearest highway, and this act was not passed to accomplish any such purpose. The appellant, too, has failed to apprehend the true intent of the act as to the second point. The act does not say that the road must be opened on the nearest line to the highway, but to the nearest highway; leaving it to the referees to determine the exact route. This seems to have been done in this case, and it does not appear that the referees transcended their jurisdiction in this respect.

"The presiding judge held that the act is of force throughout the state, as well within the limits of incorporated cities and towns as elsewhere, except where acts of incorporation, by express words or by necessary implication, exclude it," and that it is neither excluded by express words or by necessary implication by the charter of the village of Little Rock; and this ruling is made the subject of the third ground of appeal. We see no error in the presiding judge in this respect.

The act is a general and public act, and it is limited to no special locality, and it necessarily applies to the whole state, including towns and cities, unless excluded by express words or by necessary implication in the act of incorporation of some town or city. No such express words or necessary implication are found in the act incorporating the village of Little Rock.

This act was passed to meet a necessity which is left unprovided for both in the powers of the county commissioners and the municipal authorities of Little Rock. The county commissioners are confined in their jurisdiction to the public roads and highways of the county, and the municipal authorities of Little Rock to the public roads and streets of the village.

This is a contest in reference to a special private way provided

for in this act of 1872, in which the public has no interest whatever, and which is altogether beyond and outside of the jurisdiction of either of the agencies above referred to. Such being the fact, the judge was right in his ruling objected to in the second ground of appeal.

We can see no error in that part of the judge's order in which he ruled that the referees had not exceeded their jurisdiction in their findings and proceedings, as contra-distinguished from the subject matter.

There appears nothing in their mode of proceeding contrary to law or the act under which they were acting; nor can we say that the judge erred in declining to overrule and reverse their finding.

In the fifth ground of appeal it is stated that McLaurin deliberately cut himself off from the nearest highway by selling to other parties intervening lots, without reservation, and upon that ground the presiding judge should have held that he could not claim this right of way over the lands of Hamer. If the facts sustained this position there might be reason to consider this exception, but the record shows a different state of facts. It is stated in the record, or rather in the uncontradicted affidavit of McLaurin, that McLaurin, at one time, had control of all the lots and lands embraced in this contest; that, while thus in control, he opened the precise way which has been opened by the referees, and that this way was in existence when he sold off the lots to Hays and Mrs. Sternberger, and so continued until he sold to Hamer afterwards, when it was closed up by Hamer and Mrs. Sternberger moving in their fences. It is true that McLaurin made no reservation, in his different deeds, of this road, but he sold the lands with this road established and in his use, and it can hardly be supposed that he intended to yield this right of way—the only one he had—and that he deliberately cut himself off from the highway leading from Little Rock to Marion Court House. He no doubt supposed that this road, being already open and in use, would remain so.

This being so, we do not think this act precluded the referees from taking jurisdiction.

The question whether the referees, under this act, constitute

such a tribunal as would be subject to the restraining powers of prohibition when transcending their jurisdiction, has not been raised in the pleadings or argument. But in considering and passing upon the grounds of appeal, we have impliedly recognized the right of the appellant to apply for this mode of redress, and it may not be out of place to present our views on that subject. Originally, the writ of prohibition was understood to be a writ issuing out of some superior court, " directed to the judge and parties of an *inferior court,* commanding them to cease from the prosecution of a suit upon a suggestion that either the cause originally or some collateral matter therein does not belong to that jurisdiction, but to the cognizance of some other court." 3 *Bl. Com.* 112. But in practice this writ has subsequently gone beyond this limit, and it has not only been used to restrain *inferior judicial* tribunals within the orbit of their jurisdiction as to the subject matter conferred upon them, but it has also reached to their collateral proceedings when contrary to the common law or some statutory provision. Nor has it been confined entirely to inferior judicial tribunals, as seemed first to be intended ; on the contrary, it has been extended to other public functionaries, officials and persons charged with the performance of a duty not wholly judicial, and not even very extensively or strongly marked with a judicial character. *State* v. *Com'rs of Roads of Christ Church Parish,* 1 *Mills' Const.* 55; *State, ex rel. Mrs. Kohne,* v. *James Simons and B. C. Pressley,* 2 *Spears* 761.

The referees provided for under the act of 1872 are constituted a sort of court to hear and determine the question of right of way of one citizen over the lands of another, and its action is without appeal. And we have no hesitation in saying that prohibition, under the latitude above, is not only a peculiarly proper, but a necessary remedy to keep this *quasi* court within the boundary of its extraordinary powers; and, consequently, we have felt fully warranted in entertaining this appeal.

We might say further, as applicable to the facts of this case, that the writ of prohibition is a preventive remedy and not remedial.

It comes too late after the mischief, if any, has been done.

While the hand is uplifted it can arrest and prevent the blow, but, the blow once received, this writ is powerless to redress.

It seems in this case, that, whether legally or not, the road in controversy is open, the court dissolved and the parties dispersed. Under this view, even though the appellant had the right and the law on his side, he could not obtain redress through this proceeding.

The order below is affirmed and the appeal dismissed.

McIVER and McGOWAN, A. J.'s, concurred.